Here ye, here ye, here ye. This Honorable Appellate Court for the 2nd Judicial District is now back in session for soon to adjournment. The Honorable Dr. C. Hudson presiding. All right, please be seated. Thank you. Good morning again, Mr. Marshall. You may call the next case. Your Honor, this case will be adopted. 2-15-0614, the people of the state of Illinois, Plaintiff Appellee D. Thomas C. Stanford, Defendant Appellate. Arguing on behalf of the Defendant Appellate is Jessica Theresa. Arguing on behalf of the Plaintiff Appellee is Laura Moore. All right, on behalf of the Appellant, Ms. Arezzo, you may proceed. May it please the Court, Jessica Arezzo, Office of the State Appellate Defender, on behalf of Thomas Stanford. On the night of the incident, in this case, there are three people who know what happened. And those three people testified at trial, Officer Rustay, the Defendant, and Tiffany Dixon. Each of their testimonies was crucially important to the jury to understand what happened that night. There was no mention of anyone prior to that day that she had, what she had testified to at trial. Suggesting, of course, that she had made up her version of events for the purpose of trial. Wasn't there an objection when the State's Attorney made the comment? There was an objection to the, there was multiple comments. But the first comment, there was an objection. There was not an objection to the second comment. After the first comment, the judge didn't sustain it or overrule the objection. It just impugned the jury. The arguments, you know, any arguments not based on the facts should be disregarded. You're the ones that decide what the facts are. I'm talking about the argument the prosecutor basically stated that Dixon, the witness, didn't talk to anyone. Wasn't that objected to? Yes, that was objected to. And that was sustained? It was not sustained, no. But a curative instruction was given? Yes, correct. The instruction I just gave was given, but was not sustained or overruled. So wasn't it cured? It was not, because in a previous point in the argument, another objection regarding the misstatement of evidence was sustained. So this could have given the jury the impression that, well, that clearly, the judge is saying that, the prosecutor said there that wasn't true. But here, oh, well, we need to discuss, maybe it was true, maybe it wasn't true. So, you know, the disagreement. What was true was that she hadn't told the police, but she did tell the attorneys, correct? Correct. So that was the exaggeration by the prosecutor in saying, but didn't the defense argument make it clear that she did tell the attorneys? Well, the thing was, the defense counsel did make the note that she did tell the state's attorney and defense counsel. And then the prosecution also mentioned, oh, let me get the exact thing. You know, the prosecution mentioned she spoke with the state's attorney and the defense counsel, but then in the next breath said, but she unequivocally told you today was the first time she told anyone what happened. So the state was trying to argue that, although maybe she talked to these attorneys, this is the first time she's telling this version. That was what they were saying to the jury, which was not true. Doesn't that go to the weight of her testimony and her credibility? Who were they going to believe? They heard her testify and they heard the other police officers testify. I mean, doesn't that go to the weight? Who are you going to believe? Well, the jury should have the opportunity to make that determination. Hear this witness, hear the other side, and decide among themselves who they believe. But for the state to then interject something that's not true, to twist what she said and make it sound as though she testified to the fact that she never told anyone what had happened before, and that wasn't true. But there was an objection. Whether it was sustained or not, there was an objection, and the judge responded to it. So it wasn't like this whole exaggeration or inaccurate statement was left unchallenged, right? Well, I mean, I would argue that the initial statement was responded to, an admonishment was given. The state's attorney then continued on with the same argument. But the case law doesn't say that the judge has to rule on it. The case law, I think the Rush case says that if the trial court instructs the jury that closing arguments are not evidence, any error resulting is considered pure. It doesn't say in order to cure the statement, you have to, A, sustain the objection, and, B, give a curing or eliminating instruction. I think there will be the Illinois Supreme Court in the Baptiste case that did say that the prejudicial effect of the improper argument can't always be erased by an admonishment. And that court suggested sustaining the objection and instructing the jury to disregard what the prosecution said is what has been found to be sufficient to cure the prejudice, not the admonishment alone. While you're on the topic, perhaps we can move to the threshold or the bottom line question. If we were to accede that this was an improper comment, under the case law, when it is either so inflammatory that the defendant could not have received a fair trial, or it is so flagrant as to threaten a deterioration of judicial process, that seems like a fairly high hurdle. So how does this, in light of everything we're talking about with the curative instruction, raise, you know, rise to that level? Well, it's our argument that, firstly, that the evidence in this case was closely balanced. As I said at the top of my argument, we only have these three witnesses. So the testimony of Ms. Dixon was crucial to the defense case to find out what exactly did happen that day. And in light of what you're saying, how crucial her testimony was, from her testimony, wouldn't it be fair to infer that the first time she told anybody this version was in preparation for trial? There, yeah, there's no argument. That's not contested, right? Right, right. The State's attorney's argument was an exaggeration of the actual testimony, not a complete misstatement, because, in fact, she waited until just before trial before she told anyone this version, correct? Well, we don't know how long it was before trial that she spoke with the attorneys. Well, the attorneys were interviewing her in preparation for trial. Right. But I think that the words that were used, that Dixon didn't tell anyone about this, is more than just an exaggeration. The jury likely misinterpreted that to be, oh, she just got up on the stand and just told this story. I think we're actually absolutely accurate if it hung in the air alone. However, as Justice Shostak was alluding to, her testimony you had, she testified, the defense argument obviously totally contradicted or argued against that evidence. There was an objection. The court's instructions didn't really, in the context, make clear that she did speak to the attorneys about the case at some point. Didn't the overwhelming weight of the evidence contradict the state's exaggeration? I mean, look at all of the evidence and all the other things that happened around that argument and objection. So you're talking about at the time of the argument, whether or not the admonishment? Well, you've got the defense argued in closing argument, didn't they? The jury heard the benefit of the argument that this wasn't the case. She did, in fact, speak to the attorneys. There was an objection. Perhaps it should have been sustained and stricken, but it wasn't. But there was an objection. The jury knew it was contested, and the court says, hey, consider all the evidence. It wasn't like it was left unchallenged. Then I would have thought she would have had a stronger case if this was made and it just was never challenged in front of the jury. I think the problem lies, though, that after the objection, after the judge's admonishment, the state's attorney persisted in that argument. So that coupled with the original statement. What argument? She talked to no one? That she unequivocally told you today was the first time she told anyone what she was testifying to. But then the defense argued, and then they would have you say, well, she just came into court, she told you that she spoke with attorneys prior. He says, she spoke with my office, she spoke with the state's attorney's office, and there's instruction that we'll get, and that is something. Everybody has a right to interview a witness. They have a right to talk to a witness. So the defense attorney told her she's not coming in here for the first time where she has never told anyone. Right, but they were saying that even the state's attorney's argument was even if she had, you know, they backed off from anyone and said even if she had spoken to the state's attorney, not necessarily this is what she said. The state's attorney specifically said we don't know what she told the state's attorney or defense counsel. So they persisted in saying that we don't know, the state's attorney said, we don't know that what she told anyone before this was what she said here today. We know she talked to the state's attorney, but we don't have that evidence. Wasn't that just their argument on the evidence? Can't they make that interpretation? Did they have to concede when she talked to them, though? Well, you don't have to. The way that the questioning was done during her testimony was they asked, this was the first time you told anyone with law enforcement what happened. So this is the first time you told anyone what happened besides lawyers. That's when she said she talked to lawyers. So you presume that she told the lawyers what happened, which is what she told the court. That wouldn't be admissible anyway, would it? Which part? What she told the lawyers. No, but for them to argue that we don't know what she told them. Well, they don't. How is that improper argument? It's improper argument because she did tell someone before this. She did tell her version of events before this. For them to come and argue to the jury that she's just getting on the stand and making this up is improper. I see your point. It has no intuitive appeal. It has more than intuitive appeal because what you're saying is it looks like her testimony in fair defense was of recent fabrication. Right? So if the jury believes that, it really militates against the value of her testimony. Right. She just made this up now, late, to be able to help the defense. But that really isn't in the context of all the evidence the way it came out because it was challenged. There was an objection. There was a curative instruction. Then the defense got up and gave its version as to why the prosecution's argument was nonsense. Doesn't that make any difference when we determine whether it's prejudice or error? Well, certainly you have to consider all of the evidence together. However — And the jury was instructed that it's perfectly proper for her to be interviewed by attorneys. Right. And I don't think that that was a problem. I think that the problem is that the state's attorney was allowed to present mistruths about her testimony. And even if there was an objection and there was an admonishment, because we only had essentially the officer versus the defendant, she was the key witness here about, you know, what is the jury going to believe. Well, the defendant was intoxicated, right? So his memory was — He was not intoxicated. At the time of the offense, wasn't he intoxicated? I don't believe so, no. He was — I think he was sleeping when they arrived. Okay. Are there any further questions? No, ma'am. I don't have anything. Okay. Thank you. And we would ask that you reverse this conviction and bring it on for a new trial. All right. Thank you very much. One quick question back. These statements were made in rebuttal, weren't they? Yes, they were. Okay. In resp— Oh, in terms of the state's attorney, yes. They were in rebuttal. Yes. Okay. Thank you. All right. Ms. Moy, on behalf of the L.A. prosecutor, you may proceed. May I please record? Good morning, Your Honors. Counsel. My name is Cora Moy on behalf of the people. The statement claims that there is no clear or obvious error in the prosecutor's rebuttal remarks, and therefore, there is no plain error. Would you concede to the outset that the prosecutor initially misstated the evidence and exaggerated the evidence? No. Perhaps it may have been ambiguous, but— By saying she talked to nobody, how is it ambiguous? Nobody means no one. Correct, but— So was that correct? It wasn't correct, but perhaps it would have been ambiguous if taken alone. However, in the context of the entire closing argument and looking at what the prosecutor said in rebuttal, it was not an inaccurate statement that the jury was confused as to what the prosecutor was alluding to. Focus in on that. Okay. If we proceed from the position, I think it's certainly a strong argument to be made that the prosecutor's comment was an exaggeration, it was not accurate. Tell us why, though, it doesn't rise to the level of reversible error. As Your Honors have mentioned, the prosecutor made the initial statement that Tiffany Dixon did not tell anyone about what happened to her now over-18-month boyfriend living in the house. The defendant then objected. The judge gave the curative instruction that closing arguments is not evidence. The prosecutor immediately stated her correct testimony that she did not talk— she did speak to the defense counsel and to the state attorney's office. And again, the prosecutor was correct in stating that she did not say what they talked about, who it was, how long, or when it was. So once there was an objection, then the prosecutor backed off the position that she talked to quote-unquote no one and acknowledged that she had talked to these parties, correct? Correct. So you're saying— And therefore, when the prosecutor says that Dixon unequivocally told you today was the very first time she told anyone what she was testifying to, the jury was not confused that the prosecutor was referring to the fact that she did not talk to law enforcement. He correctly stated that she talked to the defense counsel and someone at the state attorney's office. There's—again, it was non-profit commentary based upon the cross-examination. And I believe the defendant has cited to the cross-examination where the ASA asked, this is the first time you told anyone about what happened to Mr. Stanford. But before that statement was made, the prosecutor asked Dixon— this is from the record on page 234— and did you talk to any of the other police there about what you had seen? Dixon says no. The prosecutor then says, did you ever go to the Ellington Police Department to talk to, for example, a supervisor there about what you had seen? She says no. And again, did you ever come to the state attorney's office and tell them what you had seen? No. So at least three times she has said no based on these questions, and it is only after this line of questioning that the prosecutor then says, so this is the first time that you have told anyone about what happened. So in looking at the context of the entire closing argument and in the cross-examination, no error has occurred here. And what is the standard then? By what you're telling us, what do we have to assess to determine whether there was prejudicial error? The—it seems as though the Supreme Court has—there's a division in the standard of review. The—I believe it is the Wheeler case that has applied the de novo standard and people v. Blue applied the abuse of discretion. And I believe in people v. Robinson, and I have a citation, if Your Honors need it, from this court, it seems as though the propriety of rulings on individual remarks are made under abuse of discretion and the cumulative effect of all improper remarks are under the de novo standard. What's the cite on that? 391 LAPP 3D 822, 2nd District in 2009. And if there are no further questions? All right. Thank you very much for your time. Thank you. We would ask that you refer the judgment below as very similar. Thank you. Ms. Rizzo, you may address the court, everybody. It's very brief. Counsel's argument that in her prior testimony, Ms. Dixon had testified that she had not gone to the police or spoken to any police, I mean, that's not the contention, isn't it, that she didn't go to the police? That's not what the State's attorney's argument was. The State's attorney's argument at trial was that she did not tell anyone what happened that night. The fact that she didn't go to the police, isn't that fact alone cast some suspicion on her testimony? No. She had gone to the police that night. She went for help. For help to get a ride to her mom's house, and that resulted in her boyfriend getting arrested. So she's just witnessed her boyfriend being, by her testimony, violently thrown to the ground by the police. It makes sense that she wouldn't feel safe going to the police, talking with the police, at risk for perhaps her own safety at that point. No further questions? Thank you. Thank you. I want to thank both sides for the quality of their arguments here this morning. The matter will, of course, be taken under advisement and a written decision will enter into force. We stand adjourned to prepare for the last case of the morning. Thank you.